Laurie G. SINGER, Plaintiff,

v.

**MAHONING COUNTY BOARD OF MENTAL RETARDATION,** Defendant.

**Civ. A. No. C 73–814 Y.**

United States District Court,
N. D. Ohio, E. D.

May 24, 1974.

Charles E. Guerrier, Rita Page Reuss, Jane M. Picker, Cleveland, Ohio, for plaintiff.

Vincent E. Gilmartin, Pros. Atty., Mahoning County, Youngstown, Ohio. for defendant.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

The above entitled cause of action came on for trial before the Court on January 30, 1974. The following shall constitute this Court's findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The evidence in the within case reveals that Laurie G. Singer was a teacher for the Board of Mental Retardation of Mahoning County and indicates that she was first employed in 1969. She was employed until September 1972, as a Home Economics teacher. She became pregnant in April of 1972, and in May of 1972, when she was approximately 7 weeks pregnant, she applied for maternity leave from September of 1972 to September 1973. Plaintiff went to Mr. Soccorsy, who is the Director, and he advised her to request maternity leave in writing, and that he would take said request to the Board. Mr. Soccorsy subsequently advised plaintiff that the Board had denied her maternity leave and that she should finish out the school year.

Mrs. Singer thereafter phoned Mr. Soccorsy and told him that due to financial problems she wanted some substitute work in September, October and November; and informed him that her child was due approximately December 22, 1972.[1] Mr. Soccorsy told plaintiff that he would attempt to schedule her for added work during the Fall of 1972. The evidence indicates that Mr. Soccorsy did in fact schedule plaintiff for additional work.

Plaintiff was told to report to work at the start of the 1972 school year as a substitute teacher at the rate of $24.00 a day and was to continue on until further notice.[2] She was called to assist the breaking-in of the new teacher. She worked until September 29th and thereafter had one day of substitute work on November 22, 1972.

Mrs. Singer indicates that in October of 1972 she was informed that her maternity leave was granted and she received notice of the same in writing. In that same month she went to the Equal Employment Opportunity Commission and filed a complaint.

■ Plaintiff therein asserted that she should have been hired as a regular teacher for the school year of 1973; that she is entitled to a normal pay increment of approximately $200.00 and would be further entitled to a $340.00 raise for the 1972–1973 school year. Plaintiff further indicated that her medical plan lapsed while she was a substitute. However, it is the determination of the Court that plaintiff failed to illustrate any damage relating to this issue, and no award can or shall be made for such claim. Plaintiff further claimed that she was entitled to approximately one day sick leave which she had not received.

Mrs. Singer indicated that she was not requesting a job during 1973–1974 school year because her husband had planned to pursue graduate studies and they were planning to leave the area. She indicated that she knew it was the policy of the Board that pregnant teachers could not work after they were five months pregnant. Plaintiff further knew that a teacher could return to work one month after delivery of her child provided her doctor indicated that she was physically capable of returning at that time. Mrs. Singer indicated that the reason she requested a full year of

1. Her child was subsequently born on December 26, 1972.

2. Evidence indicates that the rate of substitute teacher was $24.00 per day, whereas the pay of a regular teacher was between $39.00 and $40.00 per day.

maternity leave was that she did not desire to return to work in the middle of the school year and further because she intended to nurse her child.

Mrs. Singer indicated that she was on a yearly contract and she was under the impression she had to request maternity leave by May. She signed a one-year contract in August of 1970 for the 1970–1971 school year, and signed a one-year contract in April 1971 for the 1971–1972 school year. She had not been offered a contract for 1972–1973 school year, at the time she requested maternity leave.

At the time she requested maternity leave, Mr. Soccorsy, the Administrator of the Mahoning County Board of Mental Retardation, indicated that he submitted plaintiff's written request to the Board and that said request was turned down. However, he indicated he contacted the individual Board members the following day or two and the Board members thereupon approved the maternity leave. Mr. Soccorsy indicated he advised Mrs. Singer that the Board approved said leave and that thereafter he began looking for a replacement for plaintiff. He indicated that the favorable action on plaintiff's request occurred in June of 1972, and that this matter was related to Mrs. Singer, which Mrs. Singer denies. The Board minutes of June 7, 1972 show that the request for maternity leave was denied.

Mr. Soccorsy testified that in August of 1972 Mrs. Singer advised him that she needed money and she wanted him to make arrangements for her to engage in some substitute work. He indicated that he obtained Board approval and she was retained for approximately one month, in September of 1972. He said plaintiff never requested full time employment. Mr. Soccorsy further testified that a teacher was hired to replace plaintiff on a one-year contract. He testified that if Mrs. Singer had not requested a maternity leave of absence she would have been granted the right to maintain her employment as long as she wished.

The testimony of Mr. Soccorsy indicated that the Board policy was somewhat ambiguous at the time. However, the Board's written policy which was on the bulletin board, indicated that a pregnant teacher could not work beyond her fifth month of pregnancy. Although Mr. Soccorsy indicated that the Board policy at that time had been modified so that if a person wanted to stay beyond the five-month period the Board would have permitted them to stay, he frankly admitted that Mrs. Singer had not been told this.

The evidence also indicates that in July of 1972, plaintiff contacted Mr. Soccorsy and requested to teach full time for September, October and November of 1972. Mr. Soccorsy indicated that if no one else were found, plaintiff would be hired for this time period. However, in August of 1972, Mr. Soccorsy indicated that he had found some one to replace plaintiff, and that plaintiff could return for the month of September 1972 as a substitute in order to train the replacement.

## CONCLUSIONS OF LAW

The Court finds that it has proper jurisdiction of this case under Title VII of the Civil Rights Act, 1964, and the Equal Employment Act of 1972. It is the opinion of this Court that although defendant Board of Education was not subject to a liability for discrimination pursuant to Title VII of the Civil Rights Act of 1964, the amendment of the Equal Employment Act of 1972 subjected defendant to liability for discrimination. Pub.L. 92–261; 86 Stat. 103 (March 27, 1972). See also Bartmess v. Drewrys U.S.A. Inc., 444 F.2d 1186 (C. A. 7 1971); Rosen v. Public Service Electric Co., 477 F.2d 90 (C.A. 3 1973); Fillinger v. East Ohio Gas Co., 4 F.E.P. Cases 73 (N.D.Ohio 1971).

■ It is the opinion of this Court that defendant's policies concerning the maternity leave deprived plaintiff of equal employment opportunities based upon her sex. As is stated by the Seventh Circuit Court of Appeals, in the

case of Sprogis v. United Airlines, Inc., 444 F.2d 1194, at 1198 (C.A. 7 1971), "discrimination is not to be tolerated under the guise of physical properties possessed by one sex . . . ".

It is the opinion of this Court that whereas here a woman is compelled to take maternity leave of absence because of pregnancy and where such person is capable of performing her job adequately, that to force maternity leave upon her is a violation of the Equal Employment Opportunities Act of 1972, and is discrimination based upon a physical condition peculiar to her sex. See Wetzel v. Liberty Mutual Insurance Co., 372 F.Supp. 1146 (W.D.Pa.1974); Newman v. Delta Air Lines, 7 F.E.P. Cases 26 (N.D.Ga.1973). See also Cleveland Board of Education v. La Fleur, 414 U. S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

Upon review of the facts in this case and applying them to the law, it is the opinion of this Court that defendants had a policy of requiring a pregnant woman to take maternity leave, that plaintiff requested this leave pursuant to the policies of the Board, and that by so doing, the Board of Education was discriminating against plaintiff on the basis of her sex.

The Court, therefore, finds for the plaintiff and against the defendant, and next turns to the issue of damages.

The Court finds that as a matter of fact and law, plaintiff is entitled to damages for the months of September, October and November of 1972 and these months only. Upon review of the record and the pleadings, the Court finds that the amount due plaintiff for this time period is $2,004.16, which amount shall be awarded plaintiff, plus six percent interest from December 1972, said figure representing the amount plaintiff would have received had she been employed full time minus the amounts actually received for her substitute work over the same period of time.

This Court further finds that plaintiff is entitled to costs of this action, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, wherein costs are awarded to the prevailing party.

This Court further finds that plaintiff is also entitled to attorney's fees, pursuant to Title 42, U.S.C. § 2000e–5(k), which section provides in part:

"In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . "

This Court finds that reasonable attorney's fees in the instant action are $1,000.00.