**Sandra WETZEL, and Mari Ross, on behalf of themselves and all others similarly situated.**

**Equal Opportunity Commission as amicus curiae**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Appellant.**

**No. 74–1233.**

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1974.

Decided Feb. 11, 1975.

Certiorari Granted May 27, 1975. See 95 S.Ct. 1989.

McClay, Pittsburgh, Pa., for amicus curiae Westinghouse Electric Corp.

William A. Carey, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice L. Reischel, Beth L. Don, Washington, D.C., for amicus curiae E.E.O.C.

Before STALEY, HASTIE and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This appeal presents this court with significant questions of first impression. We are asked to determine whether Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[1] is violated by a private employer who maintains employment policies that exclude pregnancy benefits from the company's income protection plan and that require female employees to return to work within three months after childbirth or face termination.

Appellant, Liberty Mutual Insurance Company ("Liberty Mutual") is a national insurance underwriting business. Two of its employees, Wetzel and Ross, filed charges of sex discrimination with the Pennsylvania Human Relations Commission ("PHRC"). Filing of these charges led the company to review and change certain employment policies. The PHRC, however, failed to conciliate the parties, and Wetzel and Ross then filed charges with the United States Equal Employment Opportunity Commission ("EEOC"). After the statutory period within which charging parties are precluded from commencing litigation, Wetzel and Ross requested and received right-to-sue letters. On February 28, 1972, appellees commenced a class action on behalf of female employees of Liberty Mutual, alleging that appellant's hiring and promotion policies and its pregnancy related policies violated Title VII. The court granted the plaintiffs' motion for

Kalvin M. Grove, Steven R. Semler, Lederer, Fox & Grove, Chicago, Ill., Robert A. Penney, Boston, Mass., Clem R. Kyle, Pittsburgh, Pa., for appellant.

Howard A. Specter, Harry J. Gruener, Edward C. Smith, Litman Litman Harris and Specter, P.A., Pittsburgh, Pa., Robert F. Stone, Fine, Perlow & Stone, Pittsburgh, Pa., for appellees.

John G. Wayman, Scott F. Zimmerman, Walter P. DeForest III, Martha Hartle Munsch, Reed, Smith, Shaw &

1. Section 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), in pertinent part provides:

    "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . . ."

class action and ordered that the suit could be maintained as a class action under Rule 23(b)(2) of the Fed.R.Civ.P. On March 26, 1973, after extensive discovery, Wetzel and Ross moved for partial summary judgment only as to the issue of liability. The district court, on January 9, 1974, finding no issues of material fact, entered an interlocutory order finding that Liberty Mutual's pregnancy-related policies violated Title VII of the Civil Rights Act of 1964. Liberty Mutual subsequently filed a motion for reconsideration which was denied by the court. On February 20, 1974, the district court, pursuant to Rule 54(b), directed the entry of final judgment as to the pregnancy-related issues,[2] thus giving this court jurisdiction under 28 U.S.C. § 1291. It is from this order that Liberty Mutual appeals. The district court, in its order of January 9, 1974, also ruled that Liberty Mutual's hiring and promotion policies violated Title VII. On March 19, 1974, that court made its judgment final, and the company appealed at No. 74–1515. That appeal has been disposed of by another panel of this court, and we need not discuss the issues presented there.[3]

■ Although appellant relegated the issue to a mere footnote, we believe the question of whether the district court had jurisdiction is worthy of discussion. One who alleges a violation of Title VII may not sue in federal district court until he has exhausted his administrative remedies.[4] The filing of a charge with the EEOC is a statutory prerequisite to commencing an action in federal court. Richardson v. Miller, 446 F.2d 1247, 1248 (C.A.3, 1971).

■ Appellant contends that the portion of the complaint relating to the pregnancy policies should have been dismissed because those claims were not presented to the EEOC. The basis for this contention is that a box labeled "Benefits" on the Notice of Charge form

was not checked. Instead, a box labeled "Terms and Conditions" was checked. We find no merit in appellant's contention. The private litigant plays an important role in the enforcement of Title VII. The EEOC was created by Congress to effectuate the goals of the Civil Rights Act of 1964 ("Act"). In 1972 the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–5, provided the Commission with further authority to bring its own actions. However, the Act did not provide the Commission with direct powers of enforcement. Since enforcement lies exclusively in the federal courts, Choate v. Caterpillar Tractor Co., 402 F.2d 357, 359 (C.A.7, 1968), the rights of a private party, therefore, must not be barred by procedural technicalities if Title VII is to operate effectively. Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Courts have continuously construed Title VII so as not to allow procedural technicalities to bar a claim under the Act. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (C.A.5, 1970). The only jurisdictional prerequisites that must be satisfied to commence a federal action are a timely filing of charges with the EEOC and the receiving and acting on the EEOC notice of the right to sue. 42 U.S.C. § 2000e–5(e).

■ Under the Act the charge of discrimination must be initiated by laymen—people who are apt to be of varying educational backgrounds and certainly few, if any, having knowledge of the subtleties of pleading and of statutory distinctions. Further, the complainants are probably, at this point, not represented by counsel and should not be held to as strict a standard as appellant has suggested. Since Wetzel and Ross have satisfied the jurisdictional prerequisites and are people without legal expertise, we believe that to deny them access to the federal courts because of a technical error would seriously undermine the

---

2. The district court's opinion is reported at 372 F.Supp. 1146 (W.D.Pa.1974).

3. Wetzel et al. v. Liberty Mutual Ins. Co., No. 74–1515, 508 F.2d 239 (C.A.3, 1975).

4. 42 U.S.C. § 2000e–5(e).

policies of the Act and serve only to harm the interests of those whom the Act was designed to protect. "[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." Love v. Pullman Co., 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972).

■ Also persuasive is the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). The Court held that since court actions under Title VII are *de novo* a complainant is not restricted to "those charges as to which the Commission has made findings of reasonable cause." See also Fekete v. U. S. Steel Corp., 424 F.2d 331 (C.A.3, 1970); Robinson v. Lorillard Corp., 444 F.2d 791 (C.A.4, 1971).

We, therefore, believe that the district court properly had jurisdiction.

## PREGNANCY BENEFITS

Liberty Mutual provides its employees with an income protection plan. The plan is a fringe benefit and provides employees with the payment of income during periods of disability. Funding of the plan is partially through employee contributions. After an employee is out of work eight days because of an illness requiring the care of a doctor, the employee receives a percentage of his salary for the duration of his leave. If the employee has been with the company five years or more, he receives benefits up to age 65. If the employee has been with the company less than five years, he receives the benefits for 103 weeks. Liberty Mutual, however, does not pay any benefits under the income protection plan for disability due to pregnancy or for any disability related to pregnancy. Leaves or temporary absences due to pregnancy-related disabilities are not covered by the plan.

Liberty Mutual maintains that Title VII does not require it to include pregnancy benefits in the income protection plan. In its reply brief and at oral argument, Liberty Mutual primarily relied on

Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). Appellant feels that Aiello is dispositive of the case before us. We believe there are several distinctions between the cases and therefore disagree with the appellant.

Geduldig v. Aiello involved the question of whether there was sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Here we are involved with the question of whether there was discrimination in violation of Title VII of the Civil Rights Act of 1964. In this posture our case is one of statutory interpretation rather than one of constitutional analysis. On this distinction alone we believe appellant's reliance on Aiello is misplaced.

In Geduldig v. Aiello, the Supreme Court held that the State of California could choose not to include disabilities relating to normal pregnancy within its disability insurance program and not be violative of the Fourteenth Amendment's prohibition against sex discrimination. The Court relied heavily on the fact that California's program was totally self-supporting, "never drawing on general state revenues." Geduldig v. Aiello, supra at 492, 94 S.Ct. at 2490. We are not faced with an insurance program similar to Aiello's, and we need not attempt to balance public social welfare interests with the Constitution. An examination of California's program showed that only *normal* pregnancy and delivery disabilities were excluded from the benefits, while Liberty Mutual excluded *all* pregnancy-related disabilities. It is worthy of note that at oral argument, appellant's counsel declared that the company's income protection plan would not cover a disability suffered by a pregnant woman but would have covered the disability had the woman not been pregnant. The California program as of January 1, 1974, covers certain pregnancy-related disabilities. See Geduldig v. Aiello, 417 U.S. 484, 490–91, note 15, 94 S.Ct. 2485, 41 L.Ed.2d 256.

For the above reasons we do not rely on Geduldig v. Aiello and find that it is

not dispositive of the issues presently before us.

■ We then will proceed with our analysis, first examining the legislative history of the statute involved. The Civil Rights Act of 1964 was enacted to assure equality of employment opportunities. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; Griggs v. Duke Power, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Reading the statute and the legislative history of the Act indicates that one of the goals of Congress was to provide the opportunity for anyone to enter the job market without being subjected to disparate treatment because of race, color, religion, sex, or national origin. "The purpose of this title is to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment." H.Rep. No. 914, 1964, U.S.Code Cong. & Admin.News 1964, p. 2401. Congress intended to eliminate any artificial or arbitrary impediments to employment. Until the 1964 Civil Rights Act, women had little or no legal weapons to attack their systematic exclusion from many employment opportunities. The legislative history pertaining to the addition of the word "sex" to the Act is indeed meager. It appears that the amendment to the Act was offered in a tongue-in-cheek

manner with the intent to undermine the entire Act and assist in its defeat. See 110 Cong.Rec. 2484–85 (1964).

■ In 1972 Congress had the chance to make any changes to the Act that it felt was necessary. No substantive changes were made regarding sex discrimination, and we feel this indicates a congressional satisfaction with the operation and administration of the Act. We, therefore, believe that the broad purposes of the Act can be applied to sex discrimination cases. Congress intended to strike at all discriminatory treatment of men and women. Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (C.A.7), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

To effectuate the goals of Title VII, Congress created the EEOC. 42 U.S.C. § 2000e–4. As an agency, the EEOC was given the power by Congress to issue regulations or guidelines that would indicate what are or are not proscribed discriminatory practices. These guidelines are the agency's interpretation of the statute. When faced with statutory construction problems, courts have generally held that the guidelines are entitled to great deference. McDonnell Douglas Corp. v. Green, supra; Griggs v. Duke Power Co., supra.

The guidelines[5] we deal with here prohibit an employer from discriminating

5. "§ 1604.9 Fringe benefits

"(a) 'Fringe benefits,' as used herein, includes medical, hospital, accident, life insurance and retirement benefits; profit-sharing and bonus plans; leave; and other terms, conditions, and privileges of employment.

"(b) It shall be an unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits.

*      *      *      *      *      *

"(d) It shall be an unlawful employment practice for an employer to make available benefits for the wives and families of male employees where the same benefits are not made available for the husbands and for the wives of male employees which are not made available for female employees; or to make available benefits to the husbands of female employees which are not made available for male employees. An example

of such an unlawful employment practice is a situation in which wives of male employees receive maternity benefits while female employees receive no such benefits.

*      *      *      *      *      *

"1604.10   Employment policies relating to pregnancy and childbirth

*      *      *      *      *      *

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, and availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary

between men and women with regard to employment policies and fringe benefits.

Appellant urges us to reject these guidelines on the basis that the guidelines were contra to the EEOC's earlier position and are now wholly inconsistent with the policy and understanding of the statute and therefore should be given no deference by this court. Appellant cites us Espinoza v. Farah Mfg. Co., 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973) in support of the argument. In that case the petitioner alleged that Farah had discriminated against her because of her "national origin" in violation of Title VII. The Supreme Court in Espinoza said of the EEOC guideline then in question,

> "[T]he guideline relied on . . . is no doubt entitled to great deference [citing cases], but that deference must have limits where, as here, application of the guideline would be inconsistent with an obvious congressional intent not to reach the employment practice in question." Espinoza, supra at 94, 94 S.Ct. at 339.

The Court was persuaded not to follow the EEOC interpretation of "national origin" because of legislative action by Congress. The "obvious congressional intent" was found in other statutes that required federal employees to be citizens of the United States. The Court concluded that Congress did not intend that citizenship be a requirement for federal employment and "at the same time, prevent private employers from doing likewise." Espinoza, supra at 91, 94 S.Ct. at 338. The EEOC guideline was, therefore, rejected. Appellant suggests that because the EEOC had for several years indicated that the denial of pregnancy benefits did not violate the Act and now holds that this practice does violate the Act, the EEOC is inconsistent, making

the guidelines not worthy of our consideration. The inconsistency to which the Supreme Court addressed itself in Espinoza was that the EEOC guideline was not reflective of the congressional intent. The Court did say it was significant that the EEOC had held two different views, but went on to say that the more recent guideline was entitled to great deference. Espinoza, supra at 94, 94 S.Ct. at 334. Unlike Espinoza, we have not found any congressional intent contrary to the EEOC guideline nor any "compelling indications" that it is wrong. Appellant has not shown any evidence in light of the legislative history that would indicate that the guidelines are inconsistent with any congressional intent. A study of the legislative history of the Act does not show any intent other than to strike at the broad spectrum of discrimination.

We are not persuaded by appellant's argument that because the guidelines in question were issued in 1972, they should not be given our deference. The EEOC as the agency charged with the responsibility of administering the Act, has issued the guidelines to keep pace with changes in society's attitudes. This evolutionary process is a necessary function of our legal system—a system that must remain flexible and adaptable to ever-changing concepts of our society. Congress has recognized this intrinsic process. See S.Rep.No.92–415, 92d Cong., 1st Sess., p. 5, comments by Sen. Williams.

■ We feel that the legislative purpose of the Act is furthered by the EEOC guidelines and that the guidelines are consistent with the plain meaning of the statute. Mindful that the guidelines are interpretive rules, we will give them our deference as required by Griggs v. Duke Power Co., supra.

■ Under the pertinent guidelines, it is discriminatory to treat pregnancy dif-

disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

"(c) Where the termination of an employee who is temporarily disabled is

caused by an employment policy under which insufficient or no leave is available, such a termination violates the Act if it has a disparate impact on employees of one sex and is not justified by business necessity."

ferently from other temporary disabilities. 29 C.F.R. § 1604.10(b). Liberty Mutual expressly excludes all pregnancy disabilities from coverage under its plan while at the same time covers all other disabilities except those voluntarily inflicted.

Appellant, in justification of this policy, argues that because pregnancy is voluntary and illnesses are not, pregnancy can be excluded from its income protection plan. We disagree. Voluntariness is no basis to justify disparate treatment of pregnancy. There are a great many activities that people participate in that involve a recognized risk. Most people undertake these activities with full knowledge of the potential harm. Drinking intoxicating beverages, smoking, skiing, handball and tennis are all types of activities in which one could sustain harm.

According to the Liberty Mutual's policy, all disabilities that could result from the above activities are covered under the income protection plan. Even if we were to accept appellant's argument of voluntariness, we find that some voluntary disabilities are covered while one voluntary disability that is peculiar to women is not so covered. Either way we find no support for appellant's argument. Moreover, pregnancy itself may not be voluntary. Religious convictions and methods of contraception may play a part in determining the voluntary nature of a pregnancy. There is no 100% sure method of contraception, short of surgery, and for health reasons many women cannot use the pill. This court will not accept "voluntariness" as a reasonable basis for excluding pregnancy from appellant's income protection plan.

Appellant next contends that the plan covers only those disabilities arising from sickness, and since pregnancy is not a sickness it is properly excluded from coverage. Again we disagree. We believe that pregnancy should be treated as any other temporary disability. Employers offer disability insurance plans to their employees to alleviate the economic burdens caused by the loss of income and the incurrence of medical expenses that arise from the inability to work. A woman, disabled by pregnancy, has much in common with a person disabled by a temporary illness. They both suffer a loss of income because of absence from work; they both incur medical expenses; and the pregnant woman will probably have hospitalization expenses while the other person may have none, choosing to convalesce at home.[6]

Thus, pregnancy is no different than any other temporary disability under an income protection plan offered to help employees through the financially difficult times caused by illness.

Under Liberty Mutual's plan nearly all disabilities are covered. We believe that an income protection plan that covers so many temporary disabilities but excludes pregnancy because it is not a sickness discriminates against women and cannot stand.

Appellant also contends that the plan does not violate Title VII because of the company's legitimate interest in maintaining the financial integrity of the plan.

Appellant has offered no statistical information from which we could conclude that the increased cost for pregnancy benefits would be "devastating." We do realize that there would be an increased premium. However, we are not convinced that integrity of the plan would be jeopardized.

Giving our deference to the EEOC guidelines, we agree that cost is no defense under Title VII to this particular issue. 29 C.F.R. § 1604.9(e).

Appellant advanced several other arguments to support its contentions, but we find them wholly without merit. The company's policy is neutral on its face but treats a protected class of persons in a disparate manner. This is pre-

---

**6.** See the proposal by the Citizens' Advisory Council on the Status of Women, Love's Labors Lost: New Conceptions of Maternity Leaves, 7 Harv.Civ. Rights—Civ.Lib.L.Rev. 260, 282 (1972).

cisely what Title VII intends to strike down. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158.

We conclude that Liberty Mutual's income protection plan violates Title VII of the 1964 Civil Rights Act by excluding pregnancy benefits from coverage while including other kinds of temporary disabilities.

## MATERNITY LEAVE

Prior to September 1970, appellant's female employees who became pregnant were terminated after the eighth month with no right to re-employment. This policy was modified in September 1970 and again in November 1971 to allow a pregnant woman "to work for as long as her physician certifies her ability to work." This is presently the company's policy. It further allows a woman who has been employed by the company for one year to take a maternity leave of absence of six months from when the leave commences, or three months from the date of delivery, whichever comes first. The employee must return to work by or within the time limit or lose her job. This time limitation is applied only to maternity leaves and not to any other leave of absence for other temporary disabilities. In essence, this means a person who suffered from a temporary disability other than pregnancy would return to work after recovery; however, a woman with pregnancy-related disabilities must return to work within the specified time limit or be fired.

As we did in our analysis of pregnancy benefits and for the same reasons, we allow great deference to the EEOC guidelines. Also in keeping with our prior analysis, we will view the company's leave policies, keeping in mind that pregnancy is to be treated as any other temporary disability.

▮▮▮▮ The EEOC guidelines concerning the leave issue are in pertinent part as follows:

" * * * [E]mployment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits * * * shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." 29 C.F.R. § 1604.10(b).

"Where the termination of an employee who is temporarily disabled is caused by an employment policy under which insufficient or no leave is available, such a termination violates the Act if it has a disparate impact on employees of one sex and is not justified by business necessity." 29 C.F.R. § 1604.10(c).

The guidelines also provide that it is a violation of Title VII for an employer to discriminate between men and women with regard to "fringe benefits," of which leaves are one. 29 C.F.R. § 1604.-9(a) & (b). It would appear, under the EEOC's interpretation, that Liberty Mutual's maternity leave policy violates Title VII. Pregnancy, as a temporary disability, must be treated no differently than any other disability. We are not requiring appellant to give to women any more than it already gives to men. Since appellant provides leaves for all temporary disabilities, it must also provide leaves for pregnancy on the same basis. In cases that have dealt with Title VII, courts have held that any policy that operates to totally exclude women is violative of the Act. Willingham v. Macon Telegraph Pub. Co., 482 F.2d 535 (C.A.5, 1973); Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (C.A.7, 1971); Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228 (C.A.5, 1969). In essence Liberty Mutual has two leave policies—one for pregnancy and one for other temporary disabilities. Since pregnancy is a disability common only to women, to treat it differently by applying a separate leave policy is sex discrimination. Liberty Mutual argues that since most women are recovered within six weeks and that most women do not return to work after childbirth, the company is justified in maintaining the present maternity leave policy. We disagree. This

attitude is precisely what Congress intended to strike down. Discrimination based on stereotypes or overly categorized distinctions between men and women are forbidden by Title VII. Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (C.A.7, 1969); Weeks v. Southern Bell Tel. & Tel. Co., supra. Justice Marshall, concurring in Phillips v. Martin Marietta Corp., 400 U.S. 542, 545, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971), recognized that Congress intended to prevent employers from relying on stereotyped characterizations in the formulation of their employment policies. The legal standard articulated by the EEOC requires that women be considered on an individual basis on their own particular capabilities and not on "characteristics generally attributed to the group." 29 C.F.R. § 1604.2(a)(1)(ii). A policy, therefore, that is founded on generalizations, such as most women after giving birth are fully recovered within six weeks, or that most women do not return to work after giving birth, is discriminatory because it makes no provision for considering individual capabilities. Appellant's maternity leave policy, requiring all women to return to work within three months or be fired, penalizes women because of a physiological condition found only in their sex. There is no leeway under this leave policy to ascertain individual capabilities or characteristics. As the district court properly found, Liberty Mutual's policy bears "no relation to the fitness of any individual female to perform the functions of her job." 372 F.Supp. at 1161. One woman may be physically and mentally prepared to return to her job within the arbitrary time limit, while another, although wishing to return, may be unable to do so because she has not fully recovered. We believe that a leave policy that in essence operates as two distinct policies, one affecting only women, cannot stand under Title VII. A maternity leave policy that is applied to one sex only, that is based on class generalizations of that sex, and that treats pregnancy different from other temporary disabilities, is not permitted under Title VII. The district court, therefore, properly concluded, as a matter of law, that Liberty Mutual's maternity leave policy is violative of § 703 of Title VII.

Appellant, Liberty Mutual, did not assert at trial or on its motion for reconsideration any affirmative defense, nor did it allege any evidentiary facts that could arguably give rise to a defense.[7] And even now, appellant's briefs merely allude to the possibility of a defense, never presenting to this court any substantive arguments that have been developed from the cases that have discussed this issue. There are a number of cases that consider the business-necessity defense, but Liberty Mutual has not cited any of them in relation to its justification argument. The district court, however, did address itself to the possibility of a bona fide occupational qualification, 372 F.Supp. at 1161. The court, relying on Weeks v. Southern Bell Tel. & Tel. Co., supra, and Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (C.A.9, 1971), concluded that Liberty Mutual did not meet its burden of proof because it did not present any evidence that could raise that defense.

■■■ It is only now, on appeal, that appellant attempts to justify its discriminatory policies. It is clear that an issue not raised at the trial and then presented for the first time on the appeal will not be considered by this court. A party who fails to plead or fails to produce evidence that raises certain issues is "precluded from raising such issues on appeal." Cady v. Twin Rivers Towing Co., 486 F.2d 1335, 1337 (C.A.3, 1973); Bogacki v. American Machine & Foundry Co., 417 F.2d 400, 407 (C.A.3, 1969); Crompton-Richmond Co.-Factors v. Smith, 392 F.2d 577 (C.A.3, 1967).

We conclude that Liberty Mutual's income protection plan and maternity leave policy are violative of Title VII of the 1964 Civil Rights Act. The district

7. On Liberty Mutual's motion for reconsideration, the district court noted that the company did not set forth any evidence in support of its argument. 372 F.Supp. at 1164.

court properly granted summary judgment.

For the foregoing reasons, the judgment of the district court will be affirmed.