Edith M. HOLTHAUS, Appellant,

v.

COMPTON & SONS, INC., a corporation, Appellee.

No. 74–1655.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1975.

Decided April 10, 1975.

Rehearing and Rehearing En Banc Denied May 23, 1975.

Louis Gilden, St. Louis, Mo., for appellant.

Tyree C. Derrick, St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, ROSS, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

ROSS, Circuit Judge.

The appellant, Edith M. Holthaus, alleges that she was discharged from her employment with appellee, Compton & Sons, Inc. (Compton), because of her sex. She brought a complaint under 42 U.S.C. § 2000e–5(f) after the prerequisite action was taken with the Equal Employment

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

Opportunity Commission as required by the statute. The case was tried in the Eastern District of Missouri in June, 1974 and judgment was granted Compton. We reverse the decision of the district court because we find that Mrs. Holthaus was illegally discriminated against on account of her sex.

Mrs. Holthaus began working at Compton in 1963 as a clerk-typist, but her job gradually evolved into more of a bookkeeping position. Compton, a small St. Louis printing company specializing in billboard posters, employed about eight people in its office and approximately 30 in its plant.

Mrs. Holthaus and her husband had wanted children for some time, but she had considerable difficulty becoming pregnant, and suffered a miscarriage in the fall of 1972. In March of 1973 she was diagnosed as being pregnant again; however, on May 11 she began spotting. She went to her doctor who recommended that she rest in bed until the spotting ceased, in order to decrease the risk of another miscarriage. She informed Mr. Spaeth, Compton's president, that she was pregnant and complications were arising, and of the doctor's advice. She also indicated that after she stopped spotting she would like to continue to work until November, her child being due in December. She also told Mr. Spaeth she would like to come back to work after the child was born. Compton employees who were sick could either take leave without pay or deduct the days missed from their accrued vacation time. If vacation time was used up due to illness, additional time off due to sickness was without pay. Mr. Spaeth initially agreed to allow Mrs. Holthaus to deduct the time she was bedridden from her vacation time. He also agreed to let her work after the spotting stopped until November, and to let her work after the baby was born.

Mrs. Holthaus continued to spot despite the bed rest and medication prescribed by her doctor. She had three weeks of vacation on the books, which were used up by the first part of June.

During these three weeks she kept Mr. Spaeth informed of her condition, but her doctor was unable to say when the spotting would stop and she could return to work.

On June 5, 1973, when her vacation time had expired, Mr. Spaeth called Mrs. Holthaus and told her that Compton was replacing her because they were getting behind in their work. He said that the job could not be held open for her and the company would not get temporary help. Later that day Mr. Holthaus called Mr. Spaeth. Mr. Spaeth said that in his opinion Mrs. Holthaus would be better off at home. Compton sent Mrs. Holthaus a check for wages through the first two weeks of June. Another woman was hired to replace her on June 20. Mrs. Holthaus continued to have difficulty with her pregnancy until it terminated in miscarriage in July. She was unable to find other work despite extensive effort.

The district court found that Compton had no policies dealing with pregnancy or sick leave; that Mrs. Holthaus was terminated because the work was piling up; and there was no showing that a male who was ill would have been treated any differently. We hold these findings of fact to be clearly erroneous. Fed.R.Civ.P. 52(a).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court indicated the proper order and nature of proof in actions under Title VII of the Civil Rights Act of 1964. Initially, the plaintiff carries the burden of establishing a prima facie case of discrimination. The burden then shifts to the employer to explain the action alleged to be discriminatory. Finally, the plaintiff should have a fair opportunity to show that the reasons asserted by the defendant were merely a pretext for discrimination. 411 U.S. at 802–805, 93 S.Ct. 1817. Although *McDonnell Douglas* dealt with a claim of racial discrimination, the Court has indicated that the same considerations would apply to a sex discrimination complaint under Title VII.

Edwin L. Wiegand Co. v. Jurinko, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214, vacating mem., 477 F.2d 1038 (3rd Cir. 1973).

■■■ At trial Mrs. Holthaus made a prima facie case by showing that she was disabled due to pregnancy, her employment was terminated because of her disability, and others were not terminated because of temporary disabilities. Guidelines established by the EEOC make it clear that it is a prima facie violation of Title VII to discharge employees because of pregnancy or to treat pregnancy-related disabilities differently than other temporary disabilities.[1] Regulations issued by the agency in furtherance of the act are entitled to great deference by the courts. Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). As the Third Circuit has said: "We feel that the legislative purpose of the Act is furthered by the EEOC guidelines and that the guidelines are consistent with the plain meaning of the statute." Wetzel v. Liberty Mutual Insurance Co., 511 F.2d 199, 205 (3rd Cir. 1975).

The appellee contends that Mrs. Holthaus was never terminated, but the evidence does not bear this out. The fact that she was given two weeks' pay for which she did not work clearly imports that the company considered her to be terminated and was giving her severance pay. In response to a letter from Mrs. Holthaus in December requesting her dates of employment and reason for dismissal the company indicated that she had not been dismissed, but had been removed from the payroll because she had not contacted the company or reported for work. Upon receiving the company's reply, Mrs. Holthaus called and indicated she would be in to work the next day. After conferring with counsel the company president called her back and indicated that there was no work for her and they could not use her. It appears to us that the claim that Mrs. Holthaus was not fired arose only after she had complained to the EEOC on June 13, 1973. In the telephone conversation of June 5, 1973, Mr. Spaeth clearly indicated that Mrs. Holthaus was being replaced and she had no job at Compton. Both parties understood this to mean her employment was terminated. We find appellant was terminated as of this date.

The court below found that Compton had no policy of sick leave and therefore Mrs. Holthaus had not been treated differently than any other employee. However, in answer to an interrogatory from Mrs. Holthaus requesting information about appellee's sick leave policy after accrued vacation time was spent, Compton stated: "The company has no policy referred to in [the interrogatory] but any employee absent from work for a greater period than their vacation receives no pay." Although denying any policy the company admitted that employees were allowed to remain "on va-

---

1. 29 C.F.R. § 1604.10 (1973) Employment policies relating to pregnancy and childbirth.

(a) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of title VII.

(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

(c) Where the termination of an employee who is temporarily disabled is caused by an employment policy under which insufficient or no leave is available, such a termination violates the Act if it has a disparate impact on employees of one sex and is not justified by business necessity.

See also, 29 C.F.R. § 1604.9(b) (1973) prohibiting discrimination with regard to fringe benefits.

cation" while ill; afterwards they remained on leave without pay. The other evidence confirmed this policy. Some years before Mrs. Holthaus was absent for six weeks while having an operation. Another employee was absent from the office for six to eight weeks with illness, but was not replaced. The practice generally followed was that other employees would perform the sick employee's work until he returned to his job. When complications ensued with her pregnancy, however, the company abandoned its former policy of allowing time off without pay for illness and fired Mrs. Holthaus. This established a prima facie case of violation of 42 U.S.C. § 2000e–2(a). 29 C.F.R. § 1604.10. Therefore, the burden shifted to Compton "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 802, 93 S.Ct. at 1824.

At trial the appellee sought to prove, and the court found, that Mrs. Holthaus was terminated because of business necessity. Specifically, they assert that Mrs. Holthaus's work was piling up, and other employees could not take care of it. The only evidence of this consisted of self-serving conclusions by the company president, Mr. Spaeth. Mr. Spaeth testified that some of appellant's work was divided between other office employees during her absence, but other work, such as "monthly reports and other things" customarily completed by Mrs. Holthaus could not be handled by other employees in addition to their own work. However, he was unable to say with any certainty how far behind Mrs. Holthaus's work fell before she was discharged or how long it took to catch up. He could not name a single "report form" which he had stated were piling up in her absence, and which caused such concern. The vice president of Compton testified that he and another employee divided up Mrs. Holthaus's work and were able to keep it caught up by working overtime. In the past Compton had used temporary employment services to fill in for absent employees. Mrs. Holthaus suggested that this be done when Mr. Spaeth called

her on June 5. He refused to do so, but gave no reason. We find insufficient evidence in the record from which it could be determined that there was a business necessity to terminate the appellant.

■ The court below found that Compton had no policy dealing with pregnancy, and the company stated: "pregnancy is treated as an illness." However, one fact is unrebutted. In the ten years Mrs. Holthaus worked for Compton, two employees had become pregnant. Both were fired shortly after their employer learned they were pregnant. We think the evidence establishes a policy of discrimination against pregnant women; Doe v. Osteopathic Hospital, Inc., 333 F.Supp. 1357, 1362 (D.Kan. 1971), and we find that Mrs. Holthaus was discharged on the basis of her sex in violation of 42 U.S.C. § 2000e–2(a)(1). See generally Wetzel v. Liberty Mutual Insurance Co., supra; Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); Singer v. Mahoning County Board of Mental Retardation, 379 F.Supp. 986, 989 (N.D.Ohio 1974); Gilbert v. General Electric Co., 375 F.Supp. 367, 381–382 (E.D.Va.1974).

We reverse the order of the district court and remand for proceedings consistent with this opinion.

VAN OOSTERHOUT, Senior Circuit Judge (dissenting).

I respectfully dissent. In my view the findings of the trial court are supported by substantial evidence. Pregnancy was treated by the employer like any other sickness. Included in the trial court's memorandum opinion is the following:

> There has been no showing that plaintiff's disability was treated any differently than any other disability would have been.

> .    .    .    .    .

> There has been no showing that the policy of defendant, which amounts to no policy at all, has a disparate effect upon one sex.

There has been no showing that a male employee who was unable to work and unable to say when he would be able to return to work would be treated any differently.

I would affirm the dismissal on the basis of Judge Meredith's memorandum opinion.