396 F.Supp. 1035 (1975)
Ellen Joy LISS, Plaintiff,
v.
SCHOOL DISTRICT OF the CITY OF LADUE, Defendant.
No. 73-645C (2).
United States District Court, E. D. Missouri, E. D.
May 2, 1975.
Frank Susman, St. Louis, Mo., for plaintiff.
Robert G. McClintock, St. Louis, Mo., for defendant.

*1036 MEMORANDUM OPINION

REGAN, District Judge.
This Title VII action charges defendant with an unlawful employment practice based upon plaintiff's sex. Plaintiff, a female, was employed as a teacher by defendant public school district at a salary of $10,400 during the academic year of August 1972 through June of 1973. During the period involved in this case, plaintiff was admittedly an employee and defendant was an employer as defined in Title VII as amended.
Following the birth of her child on March 20, 1973, plaintiff absented herself from work from March 26, 1973 through April 26, 1973, a total of twenty-two working days. By reason of this absence defendant deducted the sum of $1,192.52 from plaintiff's salary. This amount was determined by multiplying her per diem compensation (ascertained by dividing her gross annual salary by 192, the number of teacher-work days in the year) by the number of days she was absent. On the contention that defendant's refusal to pay her for the entire period of her absence constitutes sex discrimination, plaintiff seeks to recover the amount deducted and other relief.
Long prior to the year here involved, defendant established a general leave of absence policy which, to the extent it is in writing, is set forth in the following language:
"ABSENCE OF STAFF MEMBERS
The Ladue School District has no fixed number of days of absence permitted without salary deductions. This has proven to be advantageous to faculty as well as to the school district. It is designed to aid those of us who suffer personal illness or bereavement and those delegated to attend professional meetings. In all instances, principals should supply the superintendent with as much information as possible regarding reasons for absences.
1) Absences due to personal illness will be considered on an individual basis.
2) There will not be a deduction in salary if members of the staff are absent to attend the funeral of a member of their immediate family. This will include, spouse, children, brother, sister, mother, mother-in-law, father, father-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, grandmother, grandfather, and grandchildren.
3) Upon approval of the building principal and the Superintendent of Schools, staff members may be absent to attend professional meetings without deduction in salary.
4) Other absences approved by the building principal will necessitate a salary deduction in an amount equal to the rate of pay for a substitute teacher in the Ladue School District.
5) Unapproved absences will necessitate a reduction in pay equal to the annual salary divided by the number of days recorded in the Board-adopted school calendar."
The evidence indicates that as the policy is administered defendant deems the first of the foregoing listed reasons for absence as its "sick leave" policy. As worded, the policy is to consider "on an individual basis" all absences "due to personal illness," but it is clear from the evidence that defendant does not in fact treat such absences on an individual basis. The words "personal illness" are not defined in the policy. However, defendant has consistently interpreted those words as including not only all types of sickness, both physical and mental (whatever the cause), but accidental injuries as well. In addition, absences due to surgery (provided that it *1037 cannot be scheduled in a non-duty period) are also considered by defendant to be within its "personal illness" policy.
Defendant has never established a "maternity leave" policy as such, so that it does not require a teacher to cease work and take an unpaid leave of absence at any stage of pregnancy. Hence, cases which hold that an arbitrary assumption by an employer that a pregnant employee is unable to work productively beyond a certain period of time constitutes a form of sex discrimination are not here pertinent. So, too, cases which hold that an employer's refusal to re-employ a woman after a maternity leave is violative of Title VII are equally irrelevant.
Under the evidence, the decision as to when to leave her employment and when to return was solely that of plaintiff, dictated, of course, by her physical condition. She was admittedly paid her full salary during the entire period of her pregnancy, and payment of her full salary was resumed as of the day plaintiff determined she was able to and did return to her teaching duties.
The basic question for resolution in this case is a very narrow one: Does the so-called "sick leave" policy of defendant authorizing paid absences of staff members discriminate against women who are absent because of their disability during the recuperative postpartum period following a normal uncomplicated delivery?
We agree with defendant that pregnancy, as such, is not an illness. But that is beside the point. During the period of time for which defendant refused to compensate plaintiff she was no longer pregnant.
Defendant insists that its "personal illness" policy is not a "disability" policy and that it has no "disability" policy. However, upon analysis of defendant's "sick leave" policy it is apparent to us that the policy is in fact one to compensate teachers for absences or time lost while disabled by reason of "personal illness" as that term is construed by defendant. Unless a teacher is in fact disabled from performing her duties, her absence would not be compensable in any case.
As construed by defendant, the term "personal illness" comprehends all disabilities other than those relating to or resulting from normal pregnancy and childbirth. That a woman's strength is normally temporarily weakened following delivery cannot be gainsaid. Although the period required for recuperation may vary in individual cases, the healing process does take some time. During that time, by reason of her physical condition, the mother is disabled from performing many tasks except at undue risk to her health. In the case of so-called "personal illness" which causes comparable weakness, defendant pays the staff member for the period of his absence. We see no basis for distinguishing the two situations. In our view, defendant's refusal to compensate plaintiff for the period during which she was disabled following the birth of her child constitutes sex discrimination within the meaning of Title VII.
In the recent case of Holthaus v. Compton & Sons, Inc., 514 F.2d 651, decided April 10, 1975 by the Court of Appeals for the Eighth Circuit, it was held that a prima facie violation of Title VII is established if an employer treats a pregnancy-related disability differently than other temporary disabilities. Although Judge Van Oosterhout dissented in that case, he did so only because in his judgment there was substantial evidence to support the trial court's finding that plaintiff's disability therein was treated no differently than any other disability would have been.
Defendant relies primarily upon Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256. Geduldig is not in point. Title VII was not involved. *1038 What was there decided was simply that a state's disability insurance system which did not include the risk of disability resulting from normal pregnancy does not constitute an "invidious" discrimination violative of the Equal Protection Clause of the Fourteenth Amendment. The majority opinion held that there was a reasonable basis for the state to limit the scope of its insurance program: (1) The legitimate interest of the state in maintaining the self-supporting nature of the program, (2) the interest of the state in distributing the available resources in such a way as to keep benefit payments at an adequate level for those disabilities that are covered, rather than to cover all disabilities inadequately, and (3) the interest of the state in maintaining the contribution rate at a level that would not unduly burden participating employees, particularly low-income employees who may be most in need of the disability insurance. "These policies [said the Court] provide an objective and wholly non-invidious basis for the State's decision not to create a more comprehensive insurance program than it had."
In the instant case defendant does not contend that there is a reasonable basis for its determination to exclude disabilities resulting from childbirth from its otherwise comprehensive disability program. Hence, it is doubtful that defendant's practice could survive an Equal Protection attack, but we express no opinion on this question since it is not before us. Without regard thereto, defendant's practice is, in our judgment, within the scope of the discrimination forbidden by Title VII.
It is true that plaintiff presented no medical evidence to support her claim that she was disabled during the entire period of her absence. However, defendant has consistently operated on the honor system and has not required confirmation of the fact of disability in any case of absence due to "personal illness." There is no evidence that plaintiff was in fact able to return to work prior to the time she did, so that we accept plaintiff's testimony on this issue. Whether and to what extent defendant should require physician verification of disability is a matter not within the scope of this case.
Plaintiff has requested that we declare this to be a class action, the alleged class to consist of seven additional women. We find no basis for a class action. The class as defined in the complaint consists of all female employees who since March 24, 1972, have been denied compensation as a result of an absence from work due to pregnancy and/or the post-partum period. Plaintiff alleged that the class was too numerous to permit a practical joinder of all the members. Obviously, even if all the individuals in question do in fact come within the alleged class (and there is no evidence to support such a finding), the numbers involved are too few to justify a holding that they could not be joined had they wished to assert a claim.
We have concluded that under the facts here involved, it would be inappropriate to charge the school district with plaintiff's attorney fee.
The foregoing memorandum opinion constitutes our findings of fact and conclusions of law.
Judgment will be entered in favor of plaintiff and against defendant in the sum of $1,192.52 together with interest thereon from September 23, 1973, the date this suit was brought.