417 F.Supp. 202 (1976)
Anne FARRIS, Plaintiff,
v.
BOARD OF EDUCATION OF the CITY OF ST. LOUIS, Defendant.
No. 75-230C(1).
United States District Court, E. D. Missouri, E. D.
June 25, 1976.
*203 Clyde C. Farris, Jr., Whaley & McAuliffe, Clayton, Mo., for plaintiff.
Thomas E. Tueth, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, Chief Judge.
Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., alleging sexual discrimination in employment by reason of defendant's mandatory maternity leave policy.
*204 This matter was submitted to the Court on stipulation of facts and cross motions for summary judgment. The Court has been duly informed by briefs, affidavits, and exhibits.

Findings of Fact
1. Defendant, Board of Education of the City of St. Louis, is a tax supported, governmental agency, which operates the public schools in the City of St. Louis.
2. Plaintiff, Anne Farris, is a citizen of the United States and a resident of the State of Missouri, and has been continuously employed as a teacher by defendant since September 4, 1967.
3. From, at the latest, 1968 through July 11, 1972, defendant had in effect Regulations 7.164 and 7.733. The Regulations in question provided in part as follows:
7.164 When Salaries Are Not To Be Increased

B. "Any principal or teacher who shall have been absent more than fifty school days in the aggregate during the school year shall not receive the annual increment unless recommended by the Superintendent of Schools. However, when any principal or teacher is granted a leave of absence for the purpose of advanced study or for personal illness, upon his return to service, he shall be assigned to the schedule salary to which he would have been entitled had the absence not occurred."
7.733 Maternity Leave of Absence

"A maternity leave of absence shall be granted to a married women employee certificated or noncertificated employee under the following conditions:
A. The applicant for a maternity leave of absence shall, as soon as possible after the beginning of her last regular menstrual period, bring to the office of the Health Services Section, Division of Pupil Personnel Services, a written statement from her attending physician which shall indicate the expected date of birth of the infant and the beginning date of her last menses.
B. The supervisor of health services shall review the statement of the attending physician and in consultation with the applicant shall establish jointly with her the date of the beginning of the maternity leave of absence. The supervisor of health services shall inform the applicant that Rules and Regulations of the Board of Education make it mandatory that she take a maternity leave of absence without pay for a minimum period of 168 calendar days which shall begin no later than 140 calendar days prior to the expected birth of the infant and continue until the infant has attained an age of 28 days. The required leave of 168 calendar days may be extended to a maximum of 730 calendar days."
4. On or about November 26, 1969, plaintiff applied for a mandatory maternity leave of absence as required by defendant's Regulation 7.733.
5. On or about December 3, 1969, defendant granted plaintiff a maternity leave of absence without pay, effective January 24, 1970.
6. Plaintiff did not teach, nor was she paid, from January 24, 1970, through June 12, 1970, the end of the second semester of the 1969-70 school year.
7. Plaintiff was absent more than fifty school days during the 1969-70 school year. Defendant's maternity leave Regulation 7.733 was the sole reason that plaintiff was absent more than fifty school days during the 1969-70 school year.
8. Plaintiff's baby was born on June 30, 1970, and on or about August 13, 1970, defendant granted plaintiff's request to return to full time teaching in September of 1970.
9. Defendant, in accordance with Regulation 7.164, did not give plaintiff an incremental pay increase of $310 in September of 1970 because plaintiff had been absent more than fifty school days during the prior year.
10. An incremental pay increase is an automatic yearly increase granted to teachers *205 upon completion of each year of teaching experience.
11. The present effect of defendant's Regulations 7.164 and 7.733, which were in full force and effect in September of 1970, is that plaintiff is one step lower on defendant's salary schedule than she would have been if defendant had not required her to take a maternity leave of absence and had not denied her an incremental pay increase in September of 1970.
12. As a result of defendant's refusal to grant plaintiff her incremental pay increase in September of 1970, plaintiff has lost income in the following amounts:

1970-71 .... $310 1973-74 .... $360
1971-72 .... 360 1974-75 .... 378
1972-73 .... 360 1975-76 .... 378

13. In March of 1972, Title VII was amended to rescind the previous exemption of state agencies and educational institutions from the Act. Pub.L. 92-261, 86 Stat. 103.
14. On July 11, 1972, defendant, on advice of counsel, rescinded Regulation 7.733 and adopted in its place a regulation treating leaves of absence for pregnancy in the same manner as leaves of absence for personal illness or disability.
15. On July 21, 1972, plaintiff filed a complaint with the Equal Employment Opportunity Commission charging the defendant with violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
16. On December 10, 1974, the Justice Department sent plaintiff a letter notifying her of her right to sue within ninety days of receipt of the notice. Plaintiff received the letter on December 13, 1974.
17. On March 12, 1975, plaintiff filed her complaint in this lawsuit.

Conclusions of Law
1. This Court has jurisdiction of the subject matter and parties to this action pursuant to 42 U.S.C. § 2000e-5(f)(3).
2. Plaintiff charges defendant with employment discrimination on account of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff contends that because defendant, pursuant to its Regulation 7.733, required her to take a maternity leave of absence on January 24, 1970, she was absent more than fifty school days during the 1969-70 school year, and, therefore, pursuant to Regulation 7.164, was denied her incremental pay increase upon returning to full time teaching in September of 1970. Plaintiff claims that as a result of defendant's mandatory maternity leave of absence regulation, she is presently and will continue to be one step lower on defendant's salary schedule than other teachers with the same educational degree and teaching experience.
3. Mandatory maternity leaves, to be taken at an arbitrarily chosen state of pregnancy and based on no medical criteria, are violative of Title VII. Singer v. Mahoning County Board of Mental Retardation, 379 F.Supp. 986 (N.D.Ohio 1974), aff'd on other grounds, 519 F.2d 748 (6th Cir. 1975); Vineyard v. Hollister Elementary School District, 64 F.R.D. 580 (N.D.Cal. 1974); Newmon v. Delta Air Lines, Inc., 374 F.Supp. 238 (N.D.Ga.1973). Cf. Communications Workers of America, AFL-CIO v. American Telephone and Telegraph Co., 513 F.2d 1024 (2d Cir. 1975).
4. Prior to March of 1972 defendant was exempt from Title VII. Since the amendment of Title VII on March 24, 1972, withdrawing the exemption for state agencies and educational institutions, defendant has been subject to the Act.
5. The 1972 amendments to Title VII are not to be applied retroactively. Weise v. Syracuse University, 522 F.2d 397 (2d Cir. 1975); Monell v. Department of Social Services of City of New York, 532 F.2d 259 (2d Cir. 1976). Although the Supreme Court has not dealt directly with the retroactivity issue, the Court has implied in the case of Cleveland Board of Education v. LaFleur, 414 U.S. 632, 638-39, n. 8, 94 S.Ct. *206 791, 39 L.Ed.2d 52 (1974), that the 1972 amendments are not to be applied retroactively.
6. While Title VII was intended to have prospective application only, relief may be granted under the Act to remedy present effects of discriminatory acts which occurred prior to the effective date of the Act. Marquez v. Omaha District Sales Office, Ford Division of Ford Motor Co., 440 F.2d 1157 (8th Cir. 1971); Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5th Cir. 1970); Rackin v. University of Pennsylvania, 386 F.Supp. 992 (E.D.Pa.1974). Cf. Evans v. United Air Lines, Inc., 534 F.2d 1247 (7th Cir. 1976). As stated by the Court in Marquez, supra:
"[W]here an employer's present advancement policy serves to perpetuate the effects of past discrimination, although neutral on its face, it rejuvenates the past discrimination in both fact and law regardless of present good faith." 440 F.2d at 1159-60.
7. Plaintiff, as a satisfactory teacher with less than the disqualifying number of absences, would have received an automatic salary increment in the 1970-71 school year had she not been forced to take a mandatory maternity leave of more than fifty school days during the 1969-70 school year.
8. Due to the discriminatory mandatory maternity leave, plaintiff has been kept one step behind in the salary schedule and, therefore, continues to suffer from the present effects of the past discrimination.
9. This Court concludes that defendant is in violation of Title VII by continuing to give present effect to its past act of discrimination against plaintiff.
10. As relief, plaintiff is entitled to be raised one level on defendant's salary schedule.
11. Regarding the issue of back pay, defendant claims that its good faith in rescinding its mandatory maternity leave regulation after the enactment of the 1972 amendments to Title VII relieves it from liability.
12. The Supreme Court, in a recent case where black employees were found to be `locked' into the lower paying job classifications due to the company's strictly segregated lines of progression prior to the effective date of Title VII, rejected good faith as a bar to an award of back pay:
"[U]nder Title VII, the mere absence of bad faith simply opens the door to equity; it does not depress the scales in the employer's favor. If backpay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the `make whole' purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in `bad faith.' Title VII is not concerned with the employer's `good intent or absence of discriminatory intent' for `Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation.' Griggs v. Duke Power Co., 401 U.S., [424], at 432, [91 S.Ct. 849 at 854, 28 L.Ed.2d 158]." Albemarle Paper Co. v. Moody, 422 U.S. 405, 422-23, 95 S.Ct. 2362, 2374, 45 L.Ed.2d 280 (1975).
The standard against which the appropriateness of back pay is to be measured is as follows:
"[G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." 422 U.S. at 421, 95 S.Ct. at 2373.
In this case, plaintiff initiated her complaint with the EEOC within four months of the effective date of the 1972 amendments to the Act.
13. This Court finds an award of back pay in this case appropriate and necessary to make plaintiff whole.
14. Plaintiff cannot recover back pay for the period prior to the effective date of the 1972 amendments to the Act. *207 Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974). In Marquez, supra, the Court held that any award for back pay should not antedate the filing of the complaint with the EEOC. In this case, the effective date of the amendments and the date of the EEOC complaint coincide.
15. Accordingly, plaintiff will be awarded back pay for the 1972-73 through the 1975-76 school years, in the amount of One Thousand Four Hundred and Seventy-six Dollars ($1,476.00).
16. In accordance with 42 U.S.C. § 2000e-5(k), this Court will allow plaintiff's attorney an attorney's fee of $400.00.