UNITED STATES of America, Equal Employment Opportunity Commission, Robert L. Johnson, et al., Appellants,

v.

TRUCKING EMPLOYERS, INC., et al.

UNITED STATES of America, Equal Employment Opportunity Commission, Leon Jones, et al., Appellants,

v.

TRUCKING EMPLOYERS, INC., et al.

Nos. 76–1571 and 76–1577.

United States Court of Appeals, District of Columbia Circuit.

Argued 25 Feb. 1977.

Decided 29 June 1977.

Eric Schnapper, New York City, with whom Wiley Branton, Atlanta, Ga., was on the brief, for appellants in No. 76–1571.

William B. Gould, Stanford, Cal., with whom Anthony G. Amsterdam, Stanford, Cal., and Melvin L. Wulf, New York City, were on the brief, for appellants in No. 76–1577.

Debra A. Millenson, Atty., Equal Employment Opportunity Commission, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Beatrice Rosenberg, Atty., Equal Employment Opportunity Commission, and David L. Rose, Atty., Dept. of Justice, Washington, D. C., were on the brief for federal appellees.

Michael J. Gallagher, Kansas City, Mo., with whom Raymond F. Beagle, Kansas City, Mo., was on the brief, for appellees Arkansas-Best Freight Systems, Inc., et al.

David Previant, Milwaukee, Wis., Robert M. Baptiste and Roland P. Wilder, Jr., Washington, D. C., were on the brief, for appellee International Brotherhood of Teamsters.

Charles P. O'Connor, Harry A. Rissetto and David B. Pittaway, Washington, D. C., were on the brief, for appellees Smith's Transfer Corp. et al.

Richard D. Brew and Plato E. Papps, Washington, D. C., entered appearances for appellee International Association of Machinists and Aerospace Workers.

Before ROBINSON, ROBB and WILKEY, Circuit Judges.

Opinion for the Court filed by WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

The Government and representatives of the trucking industry negotiated a partial consent decree aimed at eliminating alleged industry-wide discrimination based on race and national origin. The decree and its implementation are challenged by intervenors. The primary question presented by these consolidated appeals is whether the District Court should have approved the decree prior to the resolution of the transfer and seniority issues which still divide the parties.

## I. PROCEDURAL BACKGROUND

On 20 March 1974 the United States filed a complaint under Title VII of the Civil Rights Act of 1964[1] and Executive Order 11246 against seven named trucking companies,[2] individually and as representatives of a class of over 300 trucking companies, against Trucking Employers, Inc., the International Brotherhood of Teamsters, the National Over the Road and City Cartage Policy and Negotiation Committee, and the International Association of Machinists. The complaint alleged that the defendants had engaged in systematic discrimination against black and Spanish-surnamed employees and applicants, the most important relating to the separation of employees into two classes, "over-the-road drivers" and "city drivers."[3] Employment as an over the road driver is more desirable; discrimination is alleged to have occurred in original hiring, permitted transfers from one class to another, and the maintenance of seniority after transfer.

Simultaneously with the filing of the complaint the United States and the seven named companies submitted to the District Court a partial consent decree, which was approved that same day. The partial consent decree purports to resolve all issues between the parties, except the seniority rights of employees who elect to transfer or who have previously transferred to the job of over the road driver. Among other things, the decree contemplates that the companies will solicit from their minority employees a waiver of certain rights under Title VII in exchange for cash payments ranging from $150 to $1,500. On 10 September 1974 the Government and six of the named defendants filed a stipulation setting forth the procedure the companies would follow in soliciting the waivers as well as the content of the proposed notices and releases.[4]

By 2 October 1974 two groups of plaintiffs in pending private Title VII actions against one or more of the named defendant companies had moved to intervene and to set aside the partial consent decree. The first group of intervenors (Johnson intervenors) contended that the proposed waivers were invalid. The second group of intervenors (Jones intervenors) not only attacked the validity of the waivers, but also challenged the entire partial consent decree as inadequate. The District Court granted both motions to intervene, but limited intervention to the question of the validity of the waivers.

The court held that the waivers were not *per se* unlawful, but approved changes in the notices suggested by the intervenors designed to assist employees in making a voluntary and knowing waiver decision. Subsequently, in response to intervenors'

---

1. The authority of the Department of Justice to commence Title VII suits expired four days later and the Equal Opportunity Commission was therefore substituted as a party plaintiff pursuant to the provisions of § 707(d), 42 U.S.C. § 2000d–6(d).

2. Arkansas-Best Freight Systems, Inc., Consolidated Freightways Corporation of Delaware, I.M.C. Freight, Inc., the Mason-Dixon Lines, Inc., Pacific Intermountain Express Company, Smith's Transfer Corporation, and Branch Motor Express Co.

3. "City drivers" here includes employees termed city drivers, peddle or short line drivers (where covered by local cartage agreements), switchers, hostlers, dockmen, checkers, combination men, forklift operators, servicemen, tiremen, greasers, garagemen, washers or lubemen.

4. The seventh defendant submitted a proposed notice to the Government which was similar in all respects to the one submitted to the court.

motion for clarification in light of *United States v. Allegheny-Ludlum Industries*[5] and *Albemarle Paper Co. v. Moody,*[6] the District Court explained that its approval of the compensation procedure meant that the court was satisfied with the settlement's "overall fairness to beneficiaries and consistency with the public interest" and that "the average compensation . . . [was] not, in the context of the overall provisions of the Consent decree, 'a mere pittance.'" Both groups of intervenors appealed and the appeals were consolidated for argument.

## II. EFFECT OF THE DECREE AND ISSUES RAISED

At the heart of the Government's complaint is the allegation that black and Spanish-surnamed Americans historically have been excluded from jobs as road drivers and discriminatorily assigned to less well paying jobs in the trucking industry. The consent decree in large part seeks to remedy these alleged industry-wide discriminatory hiring practices. Thus, the decree provides that minority employees of the affected class[7] will be given an opportunity to transfer to an over the road job. In addition, companies may elect to participate in a compensation procedure under which minority employees who indicate an interest in transferring to an over the road position as well as prior transferees[8] will be offered monetary compensation if they will execute a waiver of potential back pay claims for discrimination occurring prior to the effective date of the decree. An employee of the affected class who waives these rights will receive $150 immediately if he was hired between 1 January 1971 and 31 December 1972, $300 if

hired between 1 January 1969 and 31 December 1970, and $500 if hired before 1 January 1969. If the employee later succeeds in transferring to a road driver job he will receive an additional $300, $600, and $1,000, respectively. Prior transferees who accept the settlement will receive comparable cash payments.

Significantly, the District Court was asked to approve this compensation procedure prior to the resolution of the issue of whether employees who transfer to over the road driver positions will be allowed to carry over accumulated company seniority. While an employee need not transfer to an over the road job until the seniority issue is resolved, he must immediately decide whether to accept the monetary compensation and thereby waive his potential back pay claims. Furthermore, if an employee should decide to transfer to an over the road job prior to the resolution of the seniority issue, he will lose all accumulated seniority for purposes of bidding, layoff, and vacation schedule selection, subject to any future adjustments resulting from resolution of the seniority issue.

In *Franks v. Bowman Transportation Co.*[9] the Supreme Court detailed the critical importance of seniority in the trucking industry. "[It] determines the order of layoff and recall of employees. Further, job assignments for [over the road] drivers are posted for competitive bidding and seniority is used to determine the highest bidder. As [over the road drivers] are paid on a per mile basis, earnings are therefore to some extent a function of seniority."[10] Thus, with less seniority not only will a minority driver earn less, but he may not be employed at all. Moreover, in addition to be-

---

5. 517 F.2d 826 (5th Cir. 1975).

6. 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

7. Black and Spanish-surnamed "city driver" employees domiciled at locations where road drivers are domiciled or were domiciled since 1 July 1965.

8. Black and Spanish-surnamed employees employed as road drivers who have previously transferred to that job after 1 January 1969

from jobs as city drivers, peddle or short line drivers (where covered by local cartage agreements), switchers, hostlers, dockmen, checkers, combination men, forklift operators, servicemen, tiremen, greasers, garagemen, washers or lubemen.

9. 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

10. *Id.* at 767, 96 S.Ct. at 1265.

ing most vulnerable to layoffs the minority driver without seniority carry-over may have to spend considerable time on the extra board with little or no work available to him. In light of the basic importance of seniority carry-over, we think the failure to resolve that issue places two legal impediments to court approval of the proposed compensation procedure: the District Court's required determination of overall fairness, and the employees' required capacity to make a knowing and voluntary waiver.

## III. DISTRICT COURT DETERMINATION OF OVERALL FAIRNESS

■ As the District Court recognized, and as the Fifth Circuit has held, prior to approving a consent decree a court must satisfy itself of the settlement's "overall fairness to beneficiaries and consistency with the public interest." [11] In order to satisfy itself of the overall fairness of this settlement to minority employees, the District Court was required to examine the adequacy of the compensation being offered in exchange for the waiver of back pay claims. We reject at once the argument that a court must withhold approval of a compensation procedure simply because employees are not offered amounts that they might recover in fully litigated Title VII suits. Rather, taking into account that conciliation is the preferred means of eliminating discrimination, see *Alexander v. Gardner-Denver Co.*,[12] and recognizing the wide variation in the individual situations of mi-

nority employees, the court might well approve a settlement that offers considerably less than what a particular employee who could prove discrimination in a private Title VII suit might recover.[13]

As all parties recognize, the consent decree does not bind any employee as a matter of res judicata. Therefore, employees who are dissatisfied with the amount of money offered legally have the option of refusing the tendered compensation and pursuing private remedies.[14] Of course, this does not justify a failure to scrutinize carefully the fairness of the compensation procedure. Although the settlement does not legally bind minority employees, as intervenors point out, a settlement bearing the imprimatur of the District Court is likely to be accepted by a great majority of employees.

■ We emphasize that the question for the District Court is basically one of overall fairness. Accordingly, the adequacy of the compensation cannot be examined in the abstract, but, as the court recognized, must be judged "in the context of the overall provisions of the consent decree." We are unable to say that the court could properly satisfy itself of the overall fairness of this decree without knowing what seniority rights will eventually be given to minority employees. Obviously, the proposed settlement is more or less fair depending upon whether the monetary compensation offered in settlement of potential back pay claims is accompanied by a seniority remedy.[15] Under these circumstances, court ap-

11. *United States v. Allegheny Ludlum Industries,* 517 F.2d 826, 850 (5th Cir. 1975).

12. 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

13. The duty of the district court "to render a decree which will as far as possible eliminate the discriminatory effects of the past as well as her like discrimination in the future," *Albemarle Paper Company v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), arises only after a judicial determination of discrimination. A court asked to approve a compensation procedure established pursuant

to a consent decree in which discrimination is neither admitted nor proven is in a fundamentally different position.

14. *See Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201 (2d Cir. 1972).

15. Although stated in the context of a case of proven discrimination, the Supreme Court's admonishment in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 764–65, 96 S.Ct. 1251, 1265, 47 L.Ed.2d 444 (1976), that "adequate relief may well be denied in the absence of a seniority remedy . . . " is not without relevance here.

proval of the compensation procedure must await resolution of the seniority issues.[16]

## IV. KNOWING AND VOLUNTARY WAIVER

■ We think court approval of the compensation procedure was premature for another reason. We have no doubt that an employee can waive his right to seek back pay in a private Title VII action in return for monetary compensation. To be valid, however, such a waiver must be knowing and voluntary.[17] It must be "executed freely, without deception or coercion with a full understanding of [what] rights [are being waived]."[18]

■ It would seem beyond question that an intelligent waiver of back pay claims is not possible unless an employee knows what he is receiving in return. Certainly an employee would be willing to accept far less in back pay if he knows that upon transfer he will retain his accumulated seniority, for "seniority cuts to the very heart of Title VII's objective of eradicating present and future discrimination in a way that backpay . . . can never do."[19] On the other hand, if an employee knows that a seniority remedy is not forthcoming, the nominal compensation offered under the proposed compensation procedure might well be less attractive. Yet, an employee must now make his decision without knowing what seniority rights he will obtain. We conclude that under these circumstances a knowing waiver is not possible.

## V. WAIVER OF FUTURE DISCRIMINATION

■ The proposed waiver would release companies from "any and all claims arising out of any alleged discrimination based on race or national origin which may have occurred prior to 20 March, 1974." The parties have disputed whether this waiver releases claims arising from the future effects of past discrimination. Specifically, we have been asked to decide whether an employee who signs this release will be waiving any claims he may have against his employer for the continued maintenance of its seniority practices after 20 March 1974. Since we have held that court approval of the compensation procedure must await resolution of the seniority issue, it is unnecessary to decide the precise scope of this particular waiver. However, we think it is useful to address the general issue presented in order to avoid a possible repetition of the problem.

The problem posed by the parties would arise in a case in which a minority employee has been discriminatorily denied a job as a road driver prior to the entry of the consent decree. If after the date of the decree he is discouraged from transferring to a road driver position because of existing seniority

---

**16.** The partial consent decree approved in this case contrasts sharply with the Government-negotiated consent decree approved in *United States v. Allegheny Ludlum Industries, supra.* In that case the critical issue of seniority was resolved prior to the request for court approval. In upholding the challenged waivers the Court emphasized that the compensation offered was adequate, "especially in light of the injunctive relief" provided under the decree. 517 F.2d at 864.

**17.** *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Johnson intervenors, relying on a strained reading of *Alexander,* argue that it is impermissible to force an employee to choose between a Government-negotiated remedy and a private remedy. In *Alexander* the Court held mere submission of a claim to arbitration does not constitute either an implied waiver of the right to seek relief under Title VII in the district

court or a binding election of remedies. The Court clearly did not purport to proscribe an explicit waiver of any or all potential remedies for prior acts of discrimination in exchange for monetary compensation. On the contrary the Court stated, "[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement . . . ." 415 U.S. at 52, 94 S.Ct. at 1021. Equally without merit is the suggestion by intervenors that the scope of the waiver must be restricted to the rights which are the subject of the compromise. We think it is clear that a valid waiver may encompass wholly unrelated claims.

**18.** *Garrett v. Moore-McCormack Co., Inc.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

**19.** *Franks v. Bowman Transportation Co.,* 424 U.S. at 768 n. 28, 96 S.Ct. at 1266.

practices, he will continue to suffer monetary loss. The question is whether under these circumstances the proposed release would bar a suit to recover these post-decree damages. The answer, we think, depends upon whether the post-decree conduct of the employer constitutes a new act of discrimination. Under Title VII, there can be no prospective waiver.[20]

In *International Brotherhood of Teamsters v. United States*[21] the Supreme Court held that a seniority system adopted and maintained without discriminatory intent is "bona fide" within the meaning of § 703(h) of Title VII[22] and therefore is not unlawful, even though it may perpetuate the effects of prior acts of discrimination.[23] Thus, unless the hypothetical employee could show discriminatory purpose in the very adoption of the seniority system, he would have no claim under Title VII, and no question of waiver would arise. If, however, the employee could prove that the maintenance of the seniority system was a continuous act of intentional discrimination, the proposed release would not bar an action for post-decree damages. Similarly, the waiver would not preclude a suit arising from the post-decree operation of any neutral practice, *other than the seniority system,* that perpetuated the effects of the prior act of neutral discrimination.[24] An employer cannot purchase a license to avoid its duty to eliminate practices which perpetuate prior discriminatory acts any more than it can circumvent its responsibility for future acts of purposeful discrimination. In both cases, the strictures of Title VII are absolute.[25]

## VI. NOTICES AND RELEASES

■ There is one final point that merits brief comment. The dispute over the scope of this release highlights the need for notices and releases which clearly convey to employees what claims will be waived upon acceptance of the offered compensation. We anticipate that any future notices and releases will be drafted with this concern in mind. In particular, only notices and releases that are drafted for the comprehension of laymen can assure the knowing and intelligent decision that is a prerequisite to a valid waiver.

20. *Alexander v. Gardner-Denver Co.,* 415 U.S. at 51, 94 S.Ct. 1011.

21. 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

22. Section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h) provides in relevant part:

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority . . . system . . . provided that such differences are not the result of an intention to discriminate because of race . . . or national origin. . . .

23. *International Brotherhood of Teamsters v. United States*, at 348–355, 97 S.Ct. 1843. It makes no difference whether the seniority system perpetuates pre- or post-act discrimination. *Id.,* at 348 n. 30, 97 S.Ct. 1843; *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 396 (1977).

*International Brotherhood of Teamsters* does not undercut prior case law emphasizing the importance of seniority to employees. Indeed, the Court reaffirmed the principle established in *Franks v. Bowman Transportation Co., supra* that an employee who proves post-act hiring discrimination is entitled to full retroactive seniority. 431 U.S. at 348, 97 S.Ct. 1843. It is equally clear that *International Brotherhood of Teamsters* is not in any way inconsistent with our disposition, which simply requires that the seniority rights of employees, *whatever their scope,* be resolved prior to court approval of the proposed compensation procedure.

24. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). There the Court held that "[u]nder the Act, practices, procedures, or tests neutral on their face and even neutral in terms of intent, cannot be maintained if they operate to freeze the status quo of prior discriminatory practices." 401 U.S. at 430, 91 S.Ct. at 853. *International Brotherhood of Teamsters, supra,* proceeded on the assumption that absent 703(h), a seniority system which perpetuated the effects of prior acts of discrimination would fall under the rationale of *Griggs,* 431 U.S. at 349, 97 S.Ct. 1843.

25. *Alexander v. Gardner-Denver Co.,* 415 U.S. at 51, 94 S.Ct. 1011.

320

We see no need to address any other issues raised by the parties. Accordingly, we vacate the District Court's approval of the compensation procedure and remand for further proceedings not inconsistent with this opinion.

*So Ordered.*