**John M. MARTIN, Appellant,**

v.

**GEORGIA–PACIFIC CORPORATION, United Paperworkers International Union, and United Paperworkers International Union Local 369, Appellees.**

**No. 77–1309.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1977.

Decided Dec. 15, 1977.

Philip E. Kaplan, Walker, Kaplan & Mays, Little Rock, Ark., for appellant, Martin.

Robert S. Lindsey, Wright, Lindsey & Jennings, Little Rock, Ark., for Georgia-Pacific.

Leonard Appel, Wilson, Woods, Villalon & Hollengreen, Washington, D. C., for appellee, United Paperworkers.

Before MATTHES, Senior Circuit Judge, STEPHENSON, Circuit Judge, and WANGELIN, District Judge.*

MATTHES, Senior Circuit Judge.

On November 11, 1974, John M. Martin, a black person, filed this complaint against his employer, Georgia-Pacific Corporation (Georgia-Pacific), United Paperworkers International Union, and United Paperworkers International Union Local 369 (the latter two entities hereinafter collectively referred to as Union).[1] Georgia-Pacific oper-

---

* The Honorable H. Kenneth Wangelin, United States District Judge, United States District Court, Eastern District of Missouri, sitting by designation.

1. Jurisdiction was based (1) on Title VII of the Civil Rights Act relating to equal employment opportunities, particularly 42 U.S.C. § 2000e-2, which provides that it shall be an unlawful employment practice for an employer to dis-

ates manufacturing facilities in and around Crossett, Arkansas. Union is a labor organization and is a certified representative of the employees of Georgia-Pacific. Plaintiff alleged that he brought the action on behalf of himself and others similarly situated,[2] and that the defendants discriminated against the plaintiff class on the basis of race and color in employment procedures, job assignments, promotions, seniority system, and wage payment procedures.

Plaintiff prayed for declaratory and injunctive relief under 42 U.S.C. §§ 1981 and 2000e *et seq.* He also sought back pay and front pay, reasonable attorneys' fees, and costs. Defendants filed separate answers which denied the alleged discrimination, asserted that plaintiff was not an appropriate class representative and that plaintiff's action was barred by the applicable statute of limitations, and prayed for dismissal of the complaint. The issues having been framed, plaintiff filed admissions of fact and was deposed by Georgia-Pacific.

On December 17, 1976, the district court entered an order dismissing the complaint against Georgia-Pacific with prejudice. Plaintiff filed a motion to reconsider the judgment of dismissal. On March 3, 1977, the motion was denied in an unpublished memorandum opinion holding that plaintiff's employment discrimination claim was barred because plaintiff had not filed a timely complaint with the EEOC. The court also held that plaintiff's § 1981 claim was barred by application of Arkansas' three-year statute of limitations for actions on liabilities created by statute. Plaintiff has appealed and we affirm.

The two questions for determination are (1) whether the plaintiff's action for relief under Title VII of the Civil Rights Act relating to equal employment opportunities is barred for failure to file a timely charge with the EEOC, and (2) whether plaintiff's action for deprivation of his civil rights is barred by application of the appropriate Arkansas statute of limitations.

## I

Plaintiff began working permanently for Georgia-Pacific in its pulp mill at Crossett, Arkansas (Pulp Mill # 1) in January, 1969. In 1970, Georgia-Pacific began operating a new pulp mill (Pulp Mill # 2). The charge of discrimination in this case emanated from the transfer of employees from Pulp Mill # 1 to Pulp Mill # 2. Plaintiff averred that all of the employees at Pulp Mill # 1 had more seniority than he, except employee Gary Harrison, a white person. Harrison was awarded a job in Pulp Mill # 2 on May 15, 1970, and began working in Pulp Mill # 2 on August 2, 1970. Another white person, Henry White, was "hired in from outside the company and put on the second pulp mill" on May 11, 1970. Plaintiff was transferred to Pulp Mill # 2 in October, 1970. In his deposition, plaintiff testified that Gary Harrison "waivered" his seniority rights to other employees with more seniority, "but when they got to me that's where they stopped." In capsule form, plaintiff's complaint was and is that in 1970 two employees, Harrison and White, with less seniority, were given seniority preferences over plaintiff because of his race.[3] Plaintiff did not file a charge of discrimination with the EEOC, however, until 1974—more than three years after the alleged discriminatory acts took place. Under either 42 U.S.C. § 2000e-5(e) (Supp. II

---

criminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin; and (2) under 28 U.S.C. § 1343, which confers jurisdiction upon the district courts of any action commenced by any person to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

2. Although plaintiff's complaint alleges representation of a class of persons, plaintiff's own deposition clearly demonstrates that his class claim was without merit. He does not press the class aspects of his action on appeal.

3. Plaintiff also testified in his deposition that he processed his claim through the grievance procedure. He stated further that he requested arbitration and in due time was informed by the union officers that "they didn't see where they could win it so they rather drop it."

1972) (EEOC charge required within 180 days) or its predecessor, 42 U.S.C. § 2000e-5(d) (1970) (EEOC charge required within 90 days), plaintiff's EEOC charge of discrimination was untimely.

 Plaintiff attempts to circumvent his failure to file a timely charge of discrimination with the EEOC by asserting that the specific acts of discrimination charged were "continuing" and that he "was still suffering from the present effects of the discrimination."

In our view, plaintiff's own appraisal of defendant Georgia-Pacific's employment procedures, as disclosed in his deposition, completely refutes the allegation that he has been the victim of any discrimination, direct or indirect, since 1970, or that the defendants jointly or severally are utilizing seniority procedures designed to discriminate against black employees of Georgia Pacific. We reproduce pertinent parts of the deposition:

Q. Okay. Now, there's an allegation in the Complaint about Georgia-Pacific discriminating against Black persons in the initial hiring process, but as I understand it you wanted to work in the Paper Mill and you applied for a job in the Paper Mill and you got a job in the Paper Mill?

A. Right.

Q. Do you feel that you were discriminated against?

A. In the hire? No, I am not saying that, no.

Q. You talk about Georgia-Pacific using testing procedures and having educational requirements. Are you claiming that you have been discriminated against because of any tests or any educational requirement?

A. No.

Q. Do you know anything about that, any discrimination based on tests or education?

A. No, it didn't happen to me. I don't know about it.

Q. Okay. You talk about has [sic] racial classification for job assignments, some jobs, departments, operations are limited to Whites and limited to Blacks. Do you know anything about that?

A. Are you asking me if this has happened to me or are you saying that this is going on?

Q. Let me ask you, has it happened to you?

A. No.

 * * * * * *

Q. This lawsuit has a complaint about the seniority system. Do you know what seniority system they are talking about?

A. The seniority system?

Q. Uh-huh (meaning yes). Do you have any complaint about the seniority system? I am not talking about your individual right but do you have any complaint about the seniority system?

A. No.

Q. Do you have any complaint about the lines of progression where you are involved?

A. No, where I am involved, no.

Q. Do you have any gripe about the lines of progression anywhere in Georgia-Pacific?

A. Well, all I know about the one where I am.

Plaintiff relies on *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876 (8th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977) to buttress his continuing violation argument. Contrary to plaintiff's contention, *Franks v. Bowman Transportation Co., supra,* lends no support to his position. A discourse of the salient aspects of *Franks* would add nothing which an interested reader cannot discern. It is sufficient to observe that the facts in *Franks* are patently distinguishable.

*Allen v. Amalgamated Transit Union, Local 788, supra,* though bearing more resemblance than *Franks,* also demonstrates some factual differences. In *Allen,* the plaintiff's action was brought under § 1981 alleging the discriminatory breach of a

written contract. Consequently, we held that the Missouri five-year statute of limitations for contract actions controlled. Responding to the contention that the period of limitations had expired, we stated:

> However, the district court found that the denial of seniority rights was a continuing discrimination and that the statute had not run. We think this proposition too well-settled to require further discussion. (citations omitted.)

*Id.* at 880.

In any event, *Allen* was decided before *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In *Evans,* a female air flight attendant failed to file a timely Title VII claim against United after her employment was discriminatorily terminated in 1968 because she had married. The court held that United's refusal to credit respondent Evans with predischarge seniority after rehiring her in 1972 was not a continuing violation of Title VII, absent an allegation that United's otherwise neutral seniority system discriminated against former female employees or victims of past discrimination. As the majority stated:

> Respondent [Evans] is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered it is merely an unfortunate event in history which has no present legal consequences.

> Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently than former employees who resigned or were discharged for a nondiscriminatory reason. In short, the system is neutral in its operation. (footnote omitted.)

*Id.* at 558, 97 S.Ct. at 1888.

Plaintiff suggests that the break in service in the *Evans* case is a distinguishing feature and renders it inapposite. In our view, the *Evans* opinion did not attach any significance to this factor. As the quoted part of the opinion demonstrates, the Supreme Court painted with a broad brush and explicitly held that: "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *Id.,* 97 S.Ct. at 1889.

Here, the record is void of any showing that any discriminatory violation exists now, or has existed at any time subsequent to the incidents relied upon by plaintiff. Moreover, in the language of the Supreme Court, "the [seniority] system is neutral in its operation." *Id.,* 97 S.Ct. at 1889. Consequently, we hold that the district court properly concluded that plaintiff is barred from maintaining his Title VII claim for relief.

## II

The district court held, and the parties agree, that since 42 U.S.C. § 1981 does not provide a period of limitations for bringing an action, the federal courts must look to the most analogous state statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The district court, in concluding that Arkansas' most analogous statute of limitations is Ark.Stat. Ann. § 37–206, held that "[u]nder Arkansas law, the three-year statute of limitations is

applicable where liability is created by statute." [4]

In *Glasscoe v. Howell*, 431 F.2d 863 (8th Cir. 1970), plaintiff sued for deprivation of his civil rights pursuant to 42 U.S.C. § 1983. The question for determination was whether plaintiff's claim was barred by Arkansas' one-year statute of limitations for assault.[5] In affirming the district court's holding that Glasscoe's action was not barred, we cited numerous cases which indicated that the courts were divided on the question of the applicable state statute of limitations in § 1983 actions. We noted, in particular, that "[t]he United States Supreme Court has made it clear that an action commenced under 42 U.S.C. § 1983 alleging a deprivation of federal constitutional rights under color of state authority is a broad statutory remedy provided for by Congress." *Id.* at 865. We found it unnecessary, however, to decide whether Arkansas' three-year statute of limitations for actions on liabilities created by statute or its five-year general statute of limitations was applicable, inasmuch as the action was instituted within the statutory period of both statutes.

*Drake v. Southwestern Bell Telephone Co.*, 553 F.2d 1185 (8th Cir. 1977), is also instructive. There we observed that Mo. Rev.Stat. § 516.120 applied, *inter alia*, to an " 'action upon a liability created by statute . . .' " and stated that the cases indicated that a § 1981 action could properly be governed by such a statute, citing *Reed v. Hutto*, 486 F.2d 534 (8th Cir. 1973) and

*Glasscoe, supra*. In the present case, the district court relied in particular upon *Reed, supra*, an action brought pursuant to 42 U.S.C. § 1983. In our disposition of the limitations issue in that case, we stated that Ark.Stat.Ann. § 37–206 provides a three-year limitation period for all actions " 'founded on any contract or liability, expressed or implied.' " Since § 1983 created statutory liabilities, we held that Ark.Stat. Ann. § 37–206 could apply. Since the complaint was not filed within three years, we affirmed the dismissal of the action.

Plaintiff contends that Arkansas' five-year statute of limitations for actions on written contracts [6] is applicable since his claim involves a collective bargaining agreement. Plaintiff relies heavily on *Allen v. Amalgamated Transit Union, Local 788, supra. Allen* is clearly distinguishable from the present case, however. In *Allen* we held that the Missouri statute of limitations for actions on written contracts applied to § 1981 claims alleging discriminatory breach of collective bargaining agreements. In the case at bar, plaintiff has failed to allege breach of any provision of the collective bargaining agreement between Union and Georgia-Pacific. Thus, the Arkansas statute of limitations for actions on written contracts cannot apply.

Upon a careful analysis, we reach the conclusion that Arkansas' three-year statute of limitation must govern plaintiff's § 1981 claim. His action was not com-

---

4. The three-year statute, § 37–206, provides:

 The following actions shall be commenced within three [3] years after the passage of this act, or, when the cause of action shall not have accrued at the taking effect of this act, within three [3] years after the cause of action shall accrue: First, all actions (of debt) founded upon any contract, obligation, or liability, (not under seal [and not in writing],) excepting such as are brought upon the judgment or decree of some court of record of the United States, of this, or some other State; (second, all actions upon judgments rendered in any court not being a court of record;) third, all actions for arrearages of rent (not reserved by some instrument in writing, under seal;) fourth, all actions (of account, assumpsit, or on the case,) founded on any contract or *liability*, expressed or im-

 plied; fifth, all actions for trespass on lands, or for libels; sixth, all actions for taking or injuring any goods or chattels. [Rev.Stat., ch. 91, § 6; C. & M. Dig., § 6950; Pope's Dig., § 8928.] (emphasis supplied.)

5. In *Glasscoe*, the plaintiff had been placed in custody and subjected to unnecessary force and violence by Arkansas police officers. Ark. Stat.Ann. § 37–201 provides for a one-year statute of limitation for assault and battery. The defendants sought unsuccessfully to invoke that statute.

6. Ark.Stat.Ann. § 37–209 provides:

 Actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five [5] years after the cause of action shall accrue, and not after.

menced within the required period. Consequently, the district court correctly held that the action was barred.

The judgment is in all respects affirmed.